Good morning. My name is Matthew Davis. I represent the appellants. This is a very vanilla state law contract case that was an exercise in frustration for me because I never could quite get anyone to actually look at the issue that we think is the issue that matters. And in his findings of fact and conclusions of law at excerpts of records page 30, Judge Martinez said that Thrifty was ready, willing, and able to perform its duties under the contract and did in fact perform by timely delivery of the deed and other required documents into escrow by 11 a.m. on April 29. And the court equated Thrifty's performance with signing the deeds and sitting into escrow. And we tried this case on a very narrow basis because of how the case turned out and the evidence turned out. And it's sort of happenstancical that what everybody else wanted to talk about doesn't matter. Well, Mr. Davis, didn't the district court reject where I think your argument is going, the theory that there was a material breach because the premises were not fit for the purposes intended and therefore Thrifty could not fully tender performance because they didn't have a building that could be used for the purposes that your client wanted to use it for? Well, he did, but that wasn't ever the argument that was being made in the first place. So let me just... I'm trying to understand what your... Besides delivering the deeds, what do you contend that Thrifty failed to do on or before 11 a.m. on the closing date? Let me walk you through that if I can. Number one... Can you just answer the question? I can, yes. Okay. They... At that time on the closing date, the floor was completely ripped up and halfway through a $185,000 repair job. Okay. So you are arguing that the premises were in essence not ready on the closing date. I'm arguing that the premises were in a materially worse condition than they were at the time of purchasing the agreement. All right. And we have a finding of fact from the trial court that that is not so. No. So how can we overturn the trial court's determination that the floor was not in such a condition as to materially breach the warranty? And particularly in light of an as-is, where is commercial real estate? Because you have... You do not have that finding. What you have is you have a finding that the floor was not materially damaged by liquidation world and was not materially damaged by the use of the truck... The forklifts. That's not the argument at all. We agree. That's the argument at all. They had a serviceable floor and they tore it up. And Mr. Horvath said it will be fixed by the closing date. And we have the admission by Thrifty's own representative that it wasn't put back together. It was pulled up but not pulled back... Put back together at the time of closing. So what they had was a usable floor and what they got... Would have gotten at closing was a completely unusable floor. Are there... Within the district court's decision then, are there findings of fact that you believe are not supported by the evidence that would support the argument you're now making? There are... The trial court declined to make a specific finding of fact regarding what the condition of the floor was at the time of closing despite repeated requests. The trial court did not make a finding as to what the condition of the floor was at the time of closing. Linda... So I take it then you're at the... In your view, the absence of that finding then permeates the conclusions that the trial court reached. Ordinarily, the absence of a finding on a matter on which I have the burden of proof is the equivalent of a finding against me. So I obviously can't just rely on the notion that we don't have that. What I'm... What... For me, in this case, game set and match was... Is found on pages 153 to... They're in the excerpts of record. It's the testimony of Mr. Horvath represented would be done by April 30, done by April 30. It was not. Was the property in the same condition on April 30 that it was at the time of the purchase and sale agreement was executed? It was not. And then I asked her, I said, how much did it cost to do that work? And she said $185,000. And that work was just started. So what they did... In other words, if they had done nothing, we would be arguing about whether the cracks were material. And we would have had witnesses about whether the cracks material. We didn't need them because they chose to rip the floor up. And at closing to have a floor that was all ripped up and not finished. And they gave us $185,000 job to complete after closing in a contract that was as is, where is, and waived all claims. So had we closed, we would have gotten this pile of tile and concrete on the floor and had absolutely no remedy. I thought there was testimony that the work was 90 to 95% complete. That the tile was 90 to 95% removed, not that the tile was 90 to 95% installed. Can you help point me where in the record there was testimony where the 90 to 95% was mentioned? That was not how I read that. I can. That's actually Mr. Garvey's testimony that I think I had misidentified in the brief. I don't have that handy, but I'll have it on the rebuttal. Ms. Brubeck couldn't even say when the work was completed. The clerk has little pieces of paper and so after the argument rather than spending time now, you can advise us of that. I appreciate that. So the point of the matter here is this, and that is that under Washington law, the duties of a buyer and seller under a purchase and sale agreement are concurrent. And my party repudiated the contract. There's no question about that. Now when my party repudiates the contract under Washington law, that relieves Thrifty of the duty to actually tender performance. But it does not relieve Thrifty of the duty to show that it was ready, willing, and able to perform. And what we're saying is you guys on your own chose to rip this floor up and put new tiles in and it was not in the same condition. It was not fixed. If it had been done, we would have no claim. But the fact of the matter is it wasn't done. It wasn't done until months later at a cost of $185,000. So they gave us a $185,000 job to do along with the property. That's not what they were supposed to do. And the odd thing about it is the testimony of Linda Brubeck, where we asked, when this happened, what my client came and asked for, and it's in the record, is let's extend the closing until you can get the floor finished. That's the remedy that my client sought. And the answer was no, take it or leave it. So they were willing to fix the floor on their own, but they weren't willing to extend closing so that they could get their job done, meaning that they were forcing us to take over that job. When she admits that it was not in the same condition, Thrifty's performance consists of performing the agreement, which says that one of the express conditions is that it be in the same condition. We demonstrated, and I'll point it out in more detail in reply, that the floor was in much worse condition in the midst of a big repair job when they tried to foist it off on us. And when we asked for an extension, they said no. We gave them an opportunity to be able to perform, and they said no. That's what performance means under Washington law. Thank you. I thought that the district court found that the reason your client breached was they couldn't come up with the financing. That's true. It doesn't matter why my client breached. Okay, so you concede that they were not prepared on the closing date to tender the funding. Totally, totally. This case is Willener v. Sweeting, where neither party was able to perform under the terms of the agreement on the day of closing. And under Washington law, the agreement therefore terminates, the earnest money is refunded to the buyer. The case is as on point as on point gets, as long as you're willing to look at what Thrifty's true obligation to perform was, which was to deliver the building with a floor in at least as good a condition as it was on the day it was bought. Now, if they'd finished their work, it would have been better, and that would have been fabulous. If they had left it alone, I would have lost, because Judge Martinez said that the cracks were in a material defect. But instead, Thrifty chose to tear the floor up, leave it half done, and say, you get what you get, and you don't throw a fifth. When you say Thrifty chose, wasn't that by agreement? No, Mr. Horvath unilaterally said, we don't think there's a problem, but we're going to do this. Now let me switch to the Thrifty's appeal on the interest. They're right. Now, you don't contest that? No. You don't think it depends at all on what the escrow instructions say? No. Why not? We don't have the escrow instruction, but suppose the escrow instruction instructs the escrow holder, you know, to do something with the deposit. I understand that, but I also understand liquidated amounts in pre-judgment interest law under Washington law very well. And I will admit that Judge Martinez's rulings in my favor were to me as perplexing as those against me. Well, Judge Martinez said, right, he awarded the money, the deposit to Thrifty together with any interest accrued in escrow. Right. So there must have been some instructions in the escrow as to, you know, what to do with the money, right? Actually, I don't believe so. So this is actually one thing you both agree on, I think? I agree with his motion. I agree with his motion for reconsideration. I agree with his appeal. Under Washington law, if an amount is liquidated, you get pre-judgment interest. It's 12 percent. But it's 12 percent only if the parties haven't agreed. And there's no other... I'm trying to find out whether there was an agreement in the escrow instructions or not. I don't know the answer to that question. But in spite of not knowing the answer, you still agree he's entitled to 12 percent? I still agree because I don't think the escrow instructions would be the agreement that matters. I think the purchase and sale agreement would be the agreement that matters. And I think that the amount is liquidated. That's fine. Thanks. I've spent enough of my time agreeing with him. Thank you. No, I appreciate the candor on that. So I take it, rather than spend any more time on it, you... May it please the Court. You agree with him on the... I am Delbert Miller, and I represent Thrifty Payless, and I feel very good about the prospects of my cross-appeal. Okay. So why don't you move on to... If we ever get there. If we get there. But why don't you move on to the other, or backwards to the other? The agreement in this case is very clear, paragraph 8A, that the earnest money deposit shall be non-refundable to buyer except in the event of seller's default. The addendum to the agreement, which was entered into in January when the additional $300,000 was deposited, says, the deposit shall be non-refundable to buyer except in the event of seller's default. Well, isn't that basically his argument? You were in default on the day of performance because the floor was all torn up? This is the issue. The issue is, was... Did the plaintiff succeed in proving that the Thrifty was in default, and the trial court found correctly that there was no default by the seller? But it didn't make any finding. Is that... Is he correct on the condition of the floor on the closing date? The findings are... The record is replete with findings by the trial court that there was no default by Thrifty. But there's no factual finding as to the condition of the floor on the closing date, is there? The condition of the floor is undisputed. The floor was in the process of being put new tiles down. But I think the point is that there was no breach. That is not a breach of the agreement by Thrifty to have attempted to put in a new floor. Let me explain why. Just a minute. Why? Yeah, okay, explain it. Why is it not a breach? Well, first of all, I want to make the point that the reason this... The findings was the case closing did not occur because buyer couldn't come up with the money. Buyers had a huge fight between themselves. Buyers frustrated each other's ability to come up with the money. And the buyer's broker succinctly put it when he said, now we have a situation where both clients want to buy, but neither wants to buy with the other. And that was the problem. And that's SCR 193. And in mid-April 2008, they came up with a strategy to develop, to try and save the earnest money. And their argument was to find or create a breach. They had to find or create a breach by the Thrifty. And they turned to section 8E of the agreement which says, seller shall maintain the property in the same manner as prior to here to pursuant to the normal course of business. Buyer misquotes that provision in their brief. The quote, as quoted in the brief, is that the seller shall maintain the property in the same condition as prior to closing. And that's on page 5. Just a matter of what page it is. It was not in the same condition. The issue, Your Honor, is whether or not we maintained it in the same manner. What does that mean? That means that you'll take care of it as you normally would. And that means sometimes you'll replace an old floor with a new floor. There was no promise that the You just said same condition. Hear me out. Page 5 of the brief of the appellant quotes the provision as saying the seller shall maintain the property in the same condition. That is not an accurate quote of the agreement. The agreement nowhere promises that the floor will be in the same condition. The agreement says, and this is SCR 120, the paragraph of the contract, says that the property will be maintained in the same manner. Thrifty Payless has lots of stores. They have lots of stores with lots of conditions. And sometimes they maintain those floors. And so continuing to maintain it in the same manner does not mean that it will be in the same condition. In other words, if it's an old floor that needs replacing, as everyone concedes this was, then they have the option of replacing it. But that's just a contract argument. The point is that agreement was not breached. But there are several other reasons the Court held that Thrifty was not in default. And the key one is referenced by counsel. Counsel concedes that they repudiated this agreement. They repudiated the agreement on April 24 in the letter from Mr. Hafner, supplemental excerpt of proceedings, page 200. Attorney Hafner charged Thriftway with default at that point. He said that liquidation world's occupancy was wrongful, and that the floor had been materially damaged by the use of the forklifts and so forth. So on April 24, the buyers repudiated the agreement. Thereafter, having the agreement having been repudiated, as counsel concedes, Thrifty has no further obligation whatsoever to these parties. They have no obligation whatsoever to maintain either the condition or the manner of maintenance, whichever argument you pick. But clearly, it's free to do whatever it wanted to. There was no contractual promise by Thriftway to put in a new floor. But with all of the shenanigans that were going on here, the record is replete with, it's clear that there was nothing that Thrifty did was wrong. And Thrifty's statement by their attorney was, look, if putting in a new floor, at the time, we didn't know what the condition of they claimed it was damaged, and therefore, they were relieved of obligation. And so the client says, you know, if it'll save the deal, put in a new floor. But that's after repudiation. After there's no obligation to do so. They're just businessmen. They're trying to save a transaction and save a sale. They're not, and the testimony of Linda Brubeck was clear, the decision to put in a floor was not because she thought the contract required them to. It did not require them to. But it didn't prohibit them either. There was nothing in the agreement that said they could not change the condition of the floor and continue to maintain it, which is what they were doing. The clear facts, as found by the court, that there was no material breach, there was no breach by Thriftway, and furthermore, the court found, if there were a breach, it had been waived by the buyer. And those are findings that excerpts of record pages 29 to 30, paragraphs 5 to 8, and excerpts of record 27, paragraphs 17 and 18. Those are the factual findings of the court that there was the use of the space by Liquidation World, which was the argument made in the April 24 letter, was not a default. That's a finding, mixed law of fact by the judge. Use by Liquidation World was not a default. The claim also in Mr. Hafner's repudiation letter was that we had damaged the floor. The trial court found there was no material damage. Mr. Parr, the expert witness who was hired by Thriftway to find out whether or not there had been, because we didn't know if there had been or not, his finding was, no, there was no damage. The use of the premises pending the sale caused no damage whatsoever. This was an ancient old building. The floor had been cracked for a long, long time. So then we discover after the closing date, the facts that Mr. Parr testified, his testimony is uncontroverted. Counsel concedes an argument that... Your point is that they used the word condition. The contract uses the term manner. Yes. Did the district court actually make a finding as to the manner not being in default or being inconsistent with the contract? No. Actually, there was no evidence presented. They did not prove that there was a change in the manner of maintenance. As a matter of fact, I didn't discover this discrepancy until yesterday. I was reading their brief and I thought, you know, there's something odd about this. Because their argument has always been, it has to be an identical condition. You cannot change a molecule or you're going to be in breach. I kind of got sucked into that argument because they had misquoted the darn provision. And I happened, well, let's go look at the contract. I look at the contract. That's not what it says. It's kind of unreasonable to expect that there will be no molecule change. It's my argument. I made the argument in the brief. You can't step into the same river twice. I loved that when I was a philosophy major. Right, but this is a little less esoteric. I mean, if you're going to sign up for a contract for something and it says, I'm going to maintain it in the same manner, and then you show up and the place is in total chaos and havoc and somebody says, well, we're just in the process of maintaining it, that doesn't really make sense. So maintaining something and putting in a new floor or blasting up this floor don't exactly seem... Well, it goes to the materiality of the whole issue. First of all, you've got to read their April 24 repudiation letter and they're contending that we've damaged the floor. I mean, no one would have touched the floor except for this false charge that the forklifts damaged it. So that's what caused everyone, well, what the heck happened here? What can we do about it? Blah, blah, blah. Is that the expert testimony that goes to the crack here? Yes, the expert testimony. There was no damage to the floor. And so they prompted, they induced us to go in and try and do something to change it. And we're talking about business people at this point, not lawyers. And the truth of the matter is that after the repudiation, they didn't have an obligation to do that. But as business people, they would rather have the property sold for $3.2 million. So fine, we'll go in and put in new tiles if that'll make them happy. And Mr. Miller, if I understood the record correctly, at the time that the buyers first looked at it, there was a notation that the tile was in poor condition because shelving had been placed on it when it was used as a drug store. Is that right? Terrible shape. Don't question that. They were going to have to replace the floor after they bought it. And so is the record that that's what Thrifty was doing, was replacing those poor tiles with new tiles in order to eliminate this issue from concern? They were eliminating the issue of these guys having repudiated the agreement. It was not because the contract required them. No, no, I understand that. But is that the work we're talking about here, basically replacing the tiles? We're going to, okay, we don't have an obligation to put on the new tiles. They bought it as is where is. They've been broken tiles forever. It's an old building. But if that'll make the deal close, we'll do it. So there was an effort. And you've got to remember, these issues arose on the Friday before closing, which was the following Monday or Tuesday. It was like Mission Impossible. It's amazing that they even made the effort. But the point is, it was after the repudiation. And all of these volunteered efforts by Thrifty to salvage a transaction are not a breach of the contract. And the only thing that would entitle them to get their earnest money back is if they could show that Thriftway breached, that Thriftway was in default of the agreement. And the evidence is clear. And the court's factual findings are consistent throughout and are very clear. There was no proof that Thriftway, Thrifty in any way, breached its contractual agreements. Well, you know, I'm still bothered by just the factual scenario. If it is correct that Thrifty has the obligation to maintain the property in a certain course, okay. But if voluntarily, you know, you undertake to replace the floor, so tear out the old flooring, and then that's the condition of property on the closing date. To me, that doesn't seem to meet the, you know, maintenance clause of the sale contract. Well, I think the point is, in this circumstance, there was nothing in the contract that said you couldn't undertake to put in a new floor. Because actually, the testimony was, it had all been taken out. Well, you can undertake it, but, I mean, it would be, seemed to me, implied that if you undertake it, you have to complete it by the closing date. Well, I mean, we get into the realities. That was not... Suppose you undertook to, you know, to repair the roof, and you took the whole roof off, and the closing date, the place didn't have a roof. They didn't undertake it in a contractual sense. I'm not saying it's contractual. I mean, you say voluntarily. But still, the property doesn't have a roof. Well, it's kind of moot. Because these guys didn't have the money. And if they wanted to put us into floor, they have to tender the funds. But you have to be ready to perform, too, don't you? We were ready. Well, we had to until April 24th. When they repudiated the agreement, we did no longer had any contractual obligation. Now, as a matter of, in order to be entitled to the earnest money, you know, a good lawyer, Afner, he tendered the deed and all the closing documents and everything, and waited. Now, if they wanted to do what they should have done under Willner, then they should have come in and put the money in. And then they could have made this argument, well, everybody's keeping the agreement in force. But the truth is, they repudiated it. And that's what, you've got to do with the realities here, in terms of what they said and how they misled us and how they made these calls. Did they repudiate, did the district courts find a repudiation? Absolutely. Where is that finding? Where is that? That's in finding number five through eight. Five through, you mean his own? Or not the court, you know what I mean? The court's finding. Five through eight. Well, you know, there's like two sets of findings. The court's factual findings? I'll find them for you. Look at 29. You're talking about the conclusions of law, aren't you? Well, okay, yes. Actually, there is an issue there. Page 29. Page 29 of the conclusions of law. And I think what we basically, because, and I mentioned this in the brief, that some of the findings in the conclusion all look like findings of fact, but I think they're mixed findings of conclusion of fact. And finding number five on page 29, Mr. Singh clearly repudiated the agreement when he sent his notice of default to Thrifty. And that's the April 24 letter that Hafner sent on his behalf. And then on page 27, findings 17 and 18. Just a minute. 27? 27. 17, 18 is where the findings are, that there was no damage and there were old cracks and there was not a problem. And five through eight, though, of the conclusions. There was no default. Hafner repudiated, I mean, Singh repudiated no default by Thriftway. Singh's contention that Thriftway breached the sales agreement by allowing Liquidation Rule to use the space fails. This was not a material breach. Number seven, he defines material breach. And he finds that there was no material breach by Thrifty. And that is the predicate that would not entitle us to have the money back. We are, absent a breach, we're entitled to the earnest money. Thank you. Unless there's other questions? No? Thank you. We have about three and a half minutes left. I see that. That's what I get for agreeing with him. Really quickly here, in response to the question about the condition of the title, excerpts of record, page 32, testimony of Brian Engelking, the agent for Thrifty. On April 30, you visited the property and the tiles were 90% to 95% removed, right? Yes. Were they laying new tiles at the same time they were removing them? I believe they installed what they referred to as a test area to check for, I'm not sure exactly, but for moisture, etc. On April 30, was the building in the same condition as it was when the purchase and sale agreement was entered into, the floor? The floor tile had been removed at that point. So I would say no. Now that was from his testimony after the inspection that they had done. The agreement, excerpts of record, page 42, does use the word manner. Linda Brubeck, at page 130 of her testimony, so this is the December 14 testimony at page 130, questioned, do you have an ability to tell me what that paragraph means from a business perspective? From a business perspective, we maintain the property, okay? And that means you deliver it at closing in the same condition except for normal wear and tear as when it was signed, right? That's correct. Okay. And that's an important part of the promises you're making to the buyer, isn't it? Generally, yes. So Linda Brubeck had no problem interpreting that paragraph. She knew exactly what it meant. She testified as Thrifty's representative as to what it meant. But wouldn't normal wear and tear include replacing worn tile periodically? Absolutely. Absolutely, if they finished it. I'm still having a hard time reconciling your position where there's a where is, as is clause in the contract. Because the job wasn't done. And maybe the testimony at page 144 of Linda Brubeck's testimony will help you understand my frustration and our position in this case, okay? And so I was asking her questions about the floor. And so, and once you, this is on page 164. Once you determined to your own satisfaction that there was no money, as far as you were concerned, the deal was over, right? No. I was still replacing the floor. But we understood there was, at the 11th hour, there was no about that until the end. We were still replacing the floor. And you testified, and I felt we could get it done. But there was still a lot of, there's a lot going on, a lot of gossip here, say whatever, that it was going to close, wasn't going to close. I still would save the deal if they had the money. That was my intent. And to save the deal, I would replace the floor. And then my question, you would spend $185,000? Yes. But you wouldn't give an extension. That's correct. So the problem here is the floor was 90 to 95% pulled up. There was a test area laid down. That's what their own witness says. They were not willing to give us an extension in order to fix it so that we could close. As far as the repudiation on a- Are they required to give you an extension by law? No. Oh, absolutely not. But, but if they don't, then they haven't performed. Or tendered performance, they're not able to, to tender performance. Because the floor is not in the same condition which she agreed was what that required. So, under Judge Martinez's rulings, they didn't have to tear up the floor. But once they did, they couldn't give us a torn up floor at closing and tell us this is what you get and all that you get. As far as the repudiation goes, there's plenty of authority in our brief that repudiation has to be accepted by the other party. In Linda Brubeck's testimony that I just read, you said, we didn't know if the deal was on or off. We were still trying to close. There was an inspection at 1.30 on the closing date. So, it was repudiated, but the seller hadn't said, fine, the deal is off. The seller still had to be able, ready, willing, and able to perform. That meant that the floor had to be something, had to be at least as good as in its original condition, which was poor. Instead of poor, it was gone. And it cost $185,000 to fix it. And they were going to foist that $185,000 cost off on my client and say that since my client would not take the building with a $185,000 cost, that they're giving us the building with a $185,000 bill was performance. Judge Martinez bought that argument. I ask this Court not to. Thank you. Thank you. The case of Breyer v. Thrifty Payless is submitted. Thank you both for your argument this morning. We'll now hear Satter v. Thrifty.
judges: Tashima, McKeown, Tallman